**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

WALTER QUEZADA,

    Petitioner,

v.

ROY L. HENDRICKS,

    Respondent.

---

**Hon. Claire C. Cecchi**

Civil No. 11-0405 (CCC)

**AMENDED OPINION**

**APPEARANCES**:

    WALTER QUEZADA, J201002979
    Essex County Correctional Facility
    354 Doremus Avenue
    Newark, New Jersey 07105
    Petitioner Pro Se

    CARA M. SIMS
    United States Department of Justice, Office of Immigration Litigation
    P.O. Box 868, Ben Franklin Station
    Washington, D.C. 20044
    Attorney for Respondent

**CECCHI, District Judge**

    Walter Quezada, confined at the Essex County Correctional Facility in Newark, New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his pre-removal-period mandatory detention, pursuant to 8 U.S.C. § 1226(c), in the custody of the Department of Homeland Security ("DHS"). Respondent filed an Answer, a declaration, and several exhibits, and Petitioner filed a Reply. On May 20, 2011, Respondent filed a motion to dismiss the Petition on the ground that, because Petitioner's order of removal became

administratively final on April 29, 2011, his detention was no longer governed by 8 U.S.C. § 1226 and Petitioner's challenge to his pre-removal period detention under § 1226(c) is moot. Petitioner filed opposition papers on June 8, 2011. On July 22, 2011, Petitioner filed a request to enjoin Respondent from transferring him outside New Jersey pending the outcome of this proceeding. For the reasons expressed in this Opinion, this Court will grant the motion to dismiss, dismiss the Petition as moot, and deny Petitioner's motion as moot.

## I.  BACKGROUND

Walter Quezada, a native and citizen of Peru, challenges his detention in the custody of DHS. Petitioner emigrated to the United States from Peru in 1981 at the age of 10. On October 22, 1999, after a jury found him guilty of third-degree unlawful possession of a weapon, see N.J. STAT. ANN. § 2C:39-5b, and second-degree certain persons not to have weapons, see N.J. STAT. ANN. § 2C:39-7b, the Superior Court of New Jersey, Law Division, sentenced Petitioner to an aggregate seven-year term of incarceration. Petitioner asserts, and the government does not dispute, that Petitioner completed serving his sentence for these offenses on May 11, 2000. (See Docket Entry No. 1, p. 5.) Quezada was not served with a Notice to Appear for removal proceedings upon his release.

Six years later, Petitioner had another run-in with the law. In 2006, Petitioner pled guilty to a second set of offenses: second-degree official misconduct, see N.J. STAT. ANN. § 2C:30-2A, third-degree false fire alarm, see N.J. STAT. ANN. § 2C:33-3, and second-degree pattern of official misconduct, see N.J. STAT. ANN. § 2C:30-2A. On May 12, 2006, the Superior Court of New Jersey sentenced Petitioner to an aggregate eight-year term of imprisonment.

On February 8, 2010, New Jersey released Petitioner on parole. At that time, DHS took him into custody. (See Docket Entry No. 7, p. 25; N.J. Dept. of Corrections, Inmate Locator,

2

https://www6.state.nj.us/DOC_Inmate/details?x=1025795&n=0 (May 19, 2011)). On February 17, 2010, DHS served Petitioner with a Notice to Appear for removal. DHS charged Petitioner with removal, pursuant to 8 U.S.C. § 1227(a)(2)(C) (conviction under any law of possessing or carrying any weapon which is a firearm or destructive device as defined in 19 U.S.C. § 921(a)). DHS based the removal proceedings on Petitioner's first set of offenses, namely the 1999 New Jersey conviction and sentence. (See Docket Entry No. 7, pp. 22-24.) The 2006 offenses did not form the basis of the removal proceedings.

On January 4, 2011, Immigration Judge Margaret R. Reichenberg ordered Petitioner removed to Peru pursuant to 8 U.S.C. § 1227(a)(2)(C) based on the October 22, 1999, New Jersey conviction. (Docket Entry No. 7, pp. 15-16.) Petitioner appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"), and on April 29, 2011, the BIA affirmed the order of the Immigration Judge without opinion. (Docket Entry No. 9, p. 13.) On or about May 31, 2011, Petitioner filed a *pro se* petition for review in the United States Court of Appeals for the Third Circuit. See Quezada-Basauri v. Attorney General, USA, (BIA 2011), *appeal docketed*, No. 11-2448 (3d Cir. May 31, 2011). On June 28, 2011, the Third Circuit denied Petitioner's motion for a stay of the order of removal, and on August 23, 2011, the Third Circuit denied his motion for reconsideration. Id.

## II. DISCUSSION

Petitioner argues (in part) that he is not subject to mandatory detention under 8 U.S.C. § 1226(c) because DHS did not take him into custody until February 8, 2010, even though he was released from incarceration on the 1999 firearm conviction forming the basis of his removal 10 years earlier on May 11, 2000. See Saysana v. Gillen, 590 F.3d 7 (1st Cir. 2009). On the merits, the government argues that this Court should defer under Chevron, U.S.A., Inc. v. Natural Res.

3

Def. Council, Inc., 467 U.S. 837 (1984), to the BIA's determination in Matter of Rojas, 23 I.&N. Dec. 117 (BIA 2001), and find that section 1226(c)'s "when the alien is released" clause does not require DHS to immediately detain an alien after he is released from jail. However, because the BIA dismissed Petitioner's administrative appeal on April 29, 2011, Respondent now moves to dismiss the Petition as moot on the ground that Petitioner's detention is no longer governed by § 1226, but rather is now governed by 28 U.S.C. § 1231. In response, Petitioner argues that his prolonged detention without a bond hearing is unconstitutional.

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his mandatory detention is not statutorily authorized by 8 U.S.C. § 1226(c) and violates his due process rights. See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir. 2005).

4

B.  Mootness

The exercise of judicial power depends upon the existence of a case or controversy because Article III of the Constitution limits the judicial power of federal courts to "cases or controversies" between parties.  U.S. CONST. Art. III, § 2.  "This "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . . The parties must continue to have 'a personal stake in the outcome' of the lawsuit."  Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990).  "This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  Spencer, 523 U.S. at 7 (citation and internal quotation marks omitted).

In this case, Petitioner challenges his pre-removal period detention, arguing that he is not subject to mandatory pre-removal period detention under 8 U.S.C. § 1226(c) (and his detention is instead governed by 8 U.S.C. § 1226(a), which authorizes a bond hearing), because he was not taken into DHS custody when he was released in 2000 from incarceration on the sentence forming the basis for removal.  See Saysana v. Gillen, 590 F.3d 7 (1st Cir. 2009).

The statutory authority to detain an alien depends on where the alien is in the removal process.  Thus, to determine whether the case is moot requires an examination of the statutes governing an alien's detention.  Three relevant statutes govern an alien's detention during removal proceedings: Section 1226, Section 1231(a)(2) and Section 1231(a)(6).

28 U.S.C. § 1226 governs the pre-removal-period detention of an alien.  Generally, pursuant to Section 1226, the Attorney General has the authority to arrest and detain an alien pending a decision on whether the alien is to be removed from the United States.  Section 1226

5

also sets certain parameters for pre-removal-period detention, including when detention is mandatory (such as in the case of criminal aliens) and when a bond hearing must be held.

The second relevant removal statute is 28 U.S.C. § 1231(a)(2). Section 1231(a)(2) requires the Attorney General to detain aliens during the removal period, which lasts 90 days. See 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien"). Under § 1231(a)(1)(B), the removal period begins at **the latest** of several events. Specifically,

> [t]he removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

The third relevant removal statute is 28 U.S.C. § 1231(a)(6). Section 1231(a)(6) provides the Attorney General with discretionary authority to detain aliens beyond the removal period, or release them under supervision. Thus, if DHS does not remove the alien within the 90 day removal period, then § 1231(a)(6) authorizes the Attorney General to either release or continue to detain the alien. Specifically, § 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6); see Zadvydas v. Davis, 533 U.S. 678 (2001).

6

In Zadvydas, the Supreme Court held that § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. The Court cautioned that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [§ 1231(a)(6)]." Id. at 699. To guide habeas courts, the Court recognized six months as a "presumptively reasonable period" of post-removal-period detention. Id. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. See also Clark v. Martinez, 543 U.S. 371, 384 (2005).

To determine whether Quezada's present detention is still governed by Section 1226, this Court must determine whether or not the removal period has begun. As previously discussed, the removal period begins **on the latest of three dates**: (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed **and** if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. See 8 U.S.C. § 1231(a)(1)(B). Subsection (iii) does not apply to Petitioner, because he does not indicate that he was detained for non-immigration purposes. Subsection (ii) does not apply because, although Quezada filed a petition for review which is pending before the Third Circuit, no court has granted a stay of removal. Accordingly, in the absence of a stay, Petitioner's removal period is governed by subsection (i), and began on the date the order of

7

removal became administratively final, i.e., April 29, 2011 (when the BIA affirmed the order of removal).[1] Accordingly, Petitioner's 90-day removal period began on April 29, 2011, and expired on July 29, 2011. As of July 30, 2011, his detention was governed by 8 U.S.C. § 1231(a)(6). As previously stated, in Zadvydas, the Supreme Court held that a six-month period of detention is presumptively reasonable under § 1231(a)(6). Petitioner's present detention is authorized by § 1231(a)(6), and the presumptively reasonable six-month period of detention could not expire before October 30, 2011.

Although Petitioner's detention is no longer governed by § 1226(c), his § 2241 Petition is not necessarily moot. Cases that are "capable of repetition" while "evading review," Turner v. Rogers, 131 S. Ct. 2507, 2511 (June 20, 2011), fall within an exception to mootness. See Diop v. Ice/Homeland Security, ___ F. 3d ___, 2011 WL 3849739 (3d Cir. Sept. 1, 2011). "This exception applies when '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.'" Id. at *4 (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975)).

In Diop, on March 19, 2008, DHS took Cheikh Diop into custody and served a notice to appear for removal charging him with removal based on a 2005 Pennsylvania conviction for recklessly endangering another person. On May 27, 2008, DHS charged that Diop was also removable as an alien convicted of a crime relating to a controlled substance, based on a 1995 Pennsylvania conviction for possessing a controlled substance with the intent to manufacture or

---

[1] An order of removal becomes "final upon the earlier of –(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B).

8

deliver it. On July 21, 2009, Diop filed a § 2241 petition in the United States District Court for the Middle District of Pennsylvania arguing that DHS violated due process by detaining him pursuant to § 1226(c) for a prolonged period of time without a bond hearing. On October 29, 2009, the District Court denied the petition. Diop filed a timely notice of appeal. While the matter was on appeal, on November 3, 2010, the Pennsylvania Court of Common Pleas vacated Diop's 1995 conviction pursuant to Padilla v. Kentucky, 130 S. Ct. 1473 (2010) (holding that the failure of defense counsel to advise an alien defendant of the immigration consequences of a guilty plea was constitutionally ineffective assistance). Pennsylvania appealed. On January 20, 2011, DHS reversed its litigating position before the Immigration Judge and filed a motion in that court stating that Diop was immediately eligible for withholding of removal based on the vacatur of the 1995 conviction, even though the vacatur was on appeal and the 2005 conviction remained intact. On February 24, 2011, after 1072 days of detention, the Immigration Judge granted withholding of removal and Diop was released from custody on bond. At that point, DHS filed a motion in the Third Circuit arguing that Diop's appeal from the order denying his § 2241 petition became moot when Diop was released from custody.

The Third Circuit held that Diop's appeal did not become moot when Diop was released from custody. Id. at *7. The Third Circuit ruled that Diop's pre-removal-period detention under § 1226(c) satisfied the first Weinstein prong (the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration) because "mootness would likely doom almost any attempt to challenge the lawfulness of pre-removal detention." Diop at *5. The Third Circuit ruled that Diop's case satisfied the second Weinstein prong because his pre-removal period of mandatory detention under § 1226(c) was capable of repetition, given the facts. The Third Circuit reasoned that, "[s]hould the vacatur of his 1995 conviction be overturned [by the state

9

appellate court] - a possibility that is far from remote - Diop would once again be ineligible for withholding of removal and the Government's position in this appeal - that 8 U.S.C. § 1226(c) requires Diop's detention without a bond hearing - would lead it to once again place Diop in confinement [pursuant to § 1226(c)]." Id. at *6. The Third Circuit also noted that, because DHS could still detain Diop under § 1226(c) on the basis of his 2005 conviction, "Diop's freedom is based on little more than governmental grace, subject to change at its discretion." Id. The Third Circuit held that, because "it is reasonable for Diop to fear that he might once again be the subject of lengthy removal proceedings and pre-removal detention at any time," his case fell into the mootness exception. Id.

Quezada's case is factually distinct, such that it is not reasonable for Quezada to fear that he might once again be the subject of pre-removal period detention at any time. Because Quezada's order of removal is administratively final and the Third Circuit denied his motion for a stay, the only way he could again be subject to pre-removal period detention under § 1226(c) is if the Third Circuit were to grant his petition for review, vacate the order of removal, and remand the case to the BIA. Unlike Diop whose "newfound freedom is the fragile result of several precarious conditions," Diop at *7, the prospect of Quezada once again being detained under § 1226(c) is too speculative to constitute a "reasonable expectation that the same complaining party will be subject to the same action again," Spencer v. Kemna, 523 U.S. 1, 17 (1998).[2]

Because Quezada is no longer detained under § 1226(c), and his case does not satisfy the "capable of repetition yet evading review" exception to mootness, this Court is constrained to

---

[2] Spencer emphasizes that a court should address the issue of mootness in terms of the "likelihood" that a favorable decision would redress the alleged injury or wrong and prohibits reliance on speculative collateral consequences which are no more than "a possibility rather than a certainty or even a probability," Spencer, 523 U.S. at 14-16.

grant the government's motion to dismiss the case as moot. See Rodney v. Mukasey, 340 Fed. App'x 761, 764 (3d Cir. 2009) (appeal of order dismissing § 2241 petition challenging pre-removal-period detention under 8 U.S.C. § 1226(c) became moot when BIA dismissed appeal from order of removal: "The injury alleged, unreasonably long pre-final order of removal detention under 8 U.S.C. § 1226(c), can no longer be redressed by a favorable judicial decision"). This Court will dismiss the Petition and deny Petitioner's request as moot.[3]

### III.  CONCLUSION

For the reasons set forth above, the Court grants Respondent's motion to dismiss, dismisses the Petition for writ of habeas corpus as moot, and denies Petitioner's request to enjoin Respondent from transferring him outside New Jersey pending the outcome of this proceeding.

s/Claire C. Cecchi, U.S.D.J.
**CLAIRE C. CECCHI, U.S.D.J.**

DATED: October 28, 2011

---

[3] The dismissal is without prejudice to the filing of a new § 2241 petition (in the district of Petitioner's detention) in the event that (a) the Third Circuit grants the petition for review, vacates the order of removal and remands, or (b) the Third Circuit denies the petition for review, but the DHS is unable to remove Petitioner under § 1231(a)(6), and Petitioner can assert facts showing good reason to believe that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future.